UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A. DOUGLAS MURCH,

          Plaintiff,

v.

THE PRUDENTIAL WELFARE BENEFIT PLAN, an ERISA Plan, and AETNA LIFE INSURANCE COMPANY,

          Defendants.

No. CO5-0992P

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on the parties' cross-motions for summary judgment and partial summary judgment (Dkt. Nos. 8 and 14). Plaintiff A. Douglas Murch is attempting to recover home-health-care benefits allegedly owed him under the Prudential Welfare Benefit Plan ("the Plan"), an ERISA health-insurance plan administered by Defendant Aetna Life Insurance Co. ("Aetna"). Both parties moved for summary judgment regarding the standard of review, Plan coverage of home health care, and whether the Plaintiff must exhaust administrative remedies for claims after March 20, 2004.

The Court DENIES Defendant's motions in totality. (1) The Court GRANTS Plaintiff's motion to have the claims reviewed de novo. The Plan documents fail to properly delegate discretionary authority to Aetna. (2) The Court DENIES Defendant's motion to deny coverage for February 8-July 17, 2004. Aetna's interpretation of the plan was substantively and procedurally unreasonable. Plaintiff is deemed to have exhausted administrative remedies for claims through July 17, 2004, and the Court REMANDS these claims to Aetna so the company may undertake a proper

ORDER - 1

review.  (3) The Court DENIES Defendant's motion to deny consideration of Plaintiff's claims beyond July 17, 2004.  Although Plaintiff did not submit a claim for this period, Plaintiff has demonstrated that doing so would have been futile.  Aetna must undertake a review of Plaintiff's home health care after July 17, 2004, reading the SPED as covering home health care that is not strictly custodial.

**Background**

Mr. Douglas Murch suffered a life-threatening stroke on December 14, 2003.  He was discharged from the hospital on February 7, 2004.  Mr. Murch is covered by a self-funded welfare benefit plan (the Prudential Welfare Benefits Plan ["the Plan"]), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. § 1001 et seq.) and administered by Aetna under an Administrative Services Only ("AZO") agreement between Aetna and Prudential.  As required under ERISA, the benefit plan has a Plan document (in this case, the Prudential Welfare Benefits Plan document) and a Summary Plan Document ("SPED," here, the Retiree Benefits Handbook), which enumerates the benefits under the Plan.

When Mr. Murch was discharged from the hospital, Dr. Lombard, one of his treating physicians, wrote a home-health certification and plan of care.  Dr. Lombard stated: "[Mr. Murch] will require a home health aid. . . . These services are medically necessary to allow him to function at home.  Without these home-based services, Mr. MURCH's residual deficits would require him to be hospitalized/institutionalized in order to be cared for safely and properly." (Dkt. 9, Ex. D, Attachment 7 at 63).  Mr. Murch's wife, Mary Murch, allegedly suffers from severe rheumatoid arthritis.

The Murches employed round-the-clock home-health-care aides after Mr. Murch returned home.  The aides' work involved both activities that required medical training and activities that did not.  The aides took Mr. Murch's vital signs; ensured his physical safety until he was able to walk on

ORDER - 2

his own; helped him dress, bathe, and transfer from bed to wheelchair; took care of his sling; installed and removed compression gloves and stockings; did light housekeeping; and sometimes simply kept Mr. Murch company.

**B. The benefit claims process.** On June 27, 2004, the Murches submitted to Aetna claims for round-the-clock health care for February 8-March 20, 2004. On August 26, a nurse in Clinician Claim Review ("CCR") recommended to the CCR medical director that Aetna cover four hours per day for February 8 through June 4 and deny coverage for the other twenty hours per day as "primarily custodial." Although no claims had yet been made for services after March 20, the nurse recommended that charges beyond June 5 be denied as "custodial." (AR Vol. 1 of 4 at AET 673-74). On September 2, 2004, Aetna orally informed the Murches that it would deny twenty of the twenty-four hours claimed per day through June 5, 2004, as "primarily custodial."

The Murches appealed Aetna's denial on September 15, 2004. On October 13, 2004, Aetna denied the appeal. On December 3, 2004, the Murches filed a claim for benefits for the period March 21 through July 17, 2004. The Murches, having not received a determination on this second claim more than four months after it was submitted, hired an attorney, who wrote to Aetna on April 25, 2005. Aetna responded with a copy of the denial of the appeal from the first claim. The Murches did not submit a claim for benefits beyond July 17, 2004.

**Legal Analysis**

Resolving this dispute requires answering four questions: (1) Do the parties dispute material issues of fact; is summary judgment appropriate in this case? (2) What standard of review should the Court use in reviewing Aetna's claims resolution—abuse of discretion or de novo? (3) Was home health care of the kind paid for by the Murches after Mr. Murch left the hospital covered under the plan, given a plain reading of the SPED? (4) Which benefit claims should the Court consider, and should coverage be considered for the period after July 17, 2004, for which the Murches did not

ORDER - 3

submit a claim?

**A. Summary judgment**

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

In this case, the parties do not dispute material issues of fact. Before the Court are the relevant Plan documents and an extensive administrative record chronicling Mr. Murch's home health care after his hospital release. Because the factual record is undisputed, summary judgment is appropriate.

**B. Standard of review**

ERISA does not expressly designate a standard of review for courts to apply when adjudicating benefit disputes. The Supreme Court has held that "a denial of benefits challenged [under ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989). In this case,

the Court must determine whether Aetna had discretionary authority that was properly delegated.

What is considered a permissible grant of discretionary authority varies among jurisdictions. The Ninth Circuit has specified that proper discretionary authority must be expressly granted by the plan's language and not follow merely from a decision maker's *exercise* of discretion: "[U]nless plan documents unambiguously say in sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan, the standard of review will be de novo." Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207 (9th Cir. 2000).

In this case, Prudential violated its own procedure, as outlined in the Plan documents, when it granted discretionary authority to Aetna. The Plan document specifies that the "Administrative Committee shall be . . . the 'plan administrator,' as defined in Section 3(16)(A) of ERISA . . . and shall have responsibility, and full and absolute discretion and authority to control . . . [the] administration of the Plan. . . ." (AR Vol. 4 of 4 at AET 2221-22, filed in paper form only). The Plan document gives the Administrative Committee authority to delegate responsibility to a "Third Party Administrator." Id. The AZO names Aetna as the plan administrator and gives Aetna "discretionary authority to determine entitlement to Plan benefits." (Dkt. 9, Ex. B at 16). However, the AZO is a contract between Prudential and Aetna; the Administrative Committee is not a signee. Because Prudential did not follow its own process for appointing a third-party administrator, Prudential did not properly delegate discretionary authority to Aetna. Mr. Murch's claims should be reviewed de novo.

Although the Court finds that Mr. Murch's claims merit de novo review because of a failure to properly delegate discretionary authority on the part of Prudential, the Court notes that it reaches the same result regarding the reasonableness of Aetna's review of Mr. Murch's claims, even when employing the abuse of discretion standard. Assuming, for the sake of argument, that Defendant Aetna is correct that discretionary authority was correctly delegated and the Court should review the

ORDER - 5

MUCH claims under the abuse of discretion standard, the Court still reaches the conclusion that Aetna's review of Plaintiff's health-care claims was substantively and procedurally unreasonable. The reasoning the Court relies on to support this result is set forth in the following section.

**C. Plain-language analysis of the Retiree Benefits Handbook (i.e., the SPED)**

Whether the standard of review is de novo or abuse-of-discretion, the Court must determine whether Aetna reasonably interpreted the terms of the Plan. The doctrine of reasonable expectations applies as a principle of federal common law controlling interpretation of insurance contracts governed by ERISA. Winters v. Costco Wholesale Corp., 49 F.3d 550, 554 (9th Cir. 1995). An ERISA contract should be interpreted "in an ordinary and popular sense as would a [person] of average intelligence and experience." Deegan v. Continental Cas. Co., 167 F.3d 502 (9th Cir. 1999). Further, ERISA plan coverage is intended to be liberally construed in order to protect the interests of beneficiaries ("coverage [is intended to] . . . be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs"). 1 ERISA Leg. History 604, S. Rep No. 93-127, 93d Cong., 1st Sess. 18 (1973), reprinted in 1974 US Code Cong. & Admin. News 4838, 4854.

In this case, the "contract" is the SPED, the primary source of information for beneficiaries. ERISA requires the SPED to be a straightforward, nontechnical explanation of what the plan is, how it works, and what benefits are available. It must be "written in a manner calculated to be understood by the average plan participant." ERISA § 102(a).

Aetna's interpretation of the SPED does not square with the reasonable expectations of an insured. A plain-language reading of the main text of the SPED (i.e., excluding the glossary) leaves one with the impression that home health care of the type that was given Mr. MUCH is covered. Glossary definitions in that document, however, contradict or leave unresolved the issue of whether and what kind of home health care is covered. The relevant language from the front of the SPED is as follows:

ORDER - 6

**Home Health Care:** The programs cover care provided in a person's home, as long as a doctor certifies, in writing, that Hospital care would be needed if home care were not available. In order to be eligible for Home Health Care, a doctor must create a written plan of care within 15 days of the start of Home Health Care services, and Home Health Care services must be preceded by at least one day of Hospital confinement. . . . Care that is strictly custodial (such as bathing and toileting) is not covered. . . . (Dkt. 9, Ex. C, Attachment 3 at 14-15)

**Other Covered Services:** . . . Private duty nursing care provided outside of a Hospital or other facility by a Registered Nurse or Licensed Practicing Nurse and required for treatment of an acute illness or injury. The program does not cover nursing care when it includes *only* Custodial Care (such as bathing and toileting). . . .  (<u>Id.</u> at 15, italics in original)

**What the Retiree Medical Programs Do Not Cover:** . . . Charges for services or supplies . . . that are not Necessary or are not appropriately provided for the care of a diagnosed sickness or injury. . . . (<u>Id.</u> at 17)

**Other Services:** Home Health Care. 100% [covered]; no Deductible; 1 day prior hospitalization required. . . . (<u>Id.</u> at 34).

Glossary definitions undermine the conclusion that home health care of the type paid for by the Murches is covered:

**Home Health Care:** Home Health Care . . . usually begins after a person has been an Inpatient in the Hospital. . . . The need for such care must be confirmed in writing by a doctor, and it must be established that the Home Health Care is taking the place of an Inpatient stay in a Hospital. . . . Custodial Care–care provided to help a person in the activities of daily living, such as dressing, bathing or toileting–is not covered under Home Health Care. . . . (Dkt. 9, Ex. C, Attachment 4 at 43; note the omission of "only" or "strictly" custodial care not being covered).

**Medically Necessary:** A Medically Necessary service, confinement or supply is one that is prescribed by a licensed physician for the diagnosis or treatment of a sickness or injury, and is generally accepted and in use by the medical community for the condition being treated or diagnosed. However, the fact that a physician prescribes a service, confinement or supply for a covered individual does not ensure that it will be considered an Eligible Expense under the Retiree Medical Program. The health care carrier will make the final decision as to what is Medically Necessary. . . . (<u>Id.</u> at 45).

**Necessary:** A service or supply furnished by a particular Provider is Necessary if Aetna determines that it is appropriate for the diagnosis, the care or the treatment of the disease or injury involved. To be appropriate, the service or supply must: Be care or treatment, as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply, both as to the disease or injury involved and the person's overall health condition. . . . In no event will the following services or supplies be considered to be Necessary: Those that do not require the technical skills of a medical, a mental health or a dental professional; those furnished mainly for the personal comfort or convenience of the person, any person who cares for him or her, any person who is part of his or her family, any health care Provider or health

ORDER - 7

> care facility. . . .

(Id. at 46-47).

Reviewing Aetna's interpretation either de novo or under an abuse-of-discretion standard, the Court overturns Aetna's interpretation of the benefits plan, finding that the language of the SPED is inconsistent with Aetna's interpretation. In a closely analogous case, <u>Saltarelli v. Bob Baker Group Medical Trust</u>, 35 F.3d 382, 385 (9th Cir. 1994), a benefits exclusion was found not in the main body of the SPED but only in the Definitions chapter and required a "coordinated reading" of separate definitions. <u>Id</u>. at 385. The court considered the exclusion "not conspicuous to attract the attention of a reasonable layman" and held the exclusion unenforceable, adopting the doctrine of reasonable expectations. <u>Id</u>.

Here, the language in the front of the SPED allows coverage for the type of health care paid for by the Murches. The language of the text as a whole, however, is self-contradictory. This is not an ERISA contract involving "two reasonable and fair interpretations" (<u>Babikian v. Paul Revere Life Ins. Co.</u>, 63 F.3d 837 (9th Cir. 1995)); the contract is poorly written. Aetna's interpretation therefore must be seen as unreasonable. <u>See</u> <u>Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan</u>, 85 F.3d 455, 458 (9th Cir. 1996) (an administrator's interpretation of an ERISA plan that conflicts with the plain language of the plan is unreasonable).

The Murches reasonably read the SPED as covering home care if it was authorized by a doctor following a hospital stay, was not strictly custodial but involved some custodial care, and was necessary. Because Mary MUCH is allegedly physically unable to transfer her husband from a wheelchair to a bath chair or a toilet, the Murches did not consider the care to be "mainly for [her] personal comfort or convenience." Letters from Drs. Lombard and Jordan support the view that the care was necessary (see Dkt. 9, Ex. D, Attachment 7 at 63-65).

Aetna's conclusion—that the Plan clearly excludes coverage for home health care that includes both care that requires medical training and care that does not—is contrary to the plain language of the text in the main part of the handbook. The text twice emphasizes that only care that is *strictly* or *only*

"custodial" is not covered. The glossary definition of "home health care" contradicts the text in the front of the handbook on this point (in the glossary, custodial care is not modified by "strictly"). Aetna argues that readers are told that capitalized terms appear in the glossary (Dkt. 9, Ex. C, Attachment 2 at 14). However, a definitive denial of coverage for custodial care appears only in the definition of "necessary," a term that does not come up in the description of home health care coverage in the front of the handbook. A beneficiary's reasonable expectation would be that home health care that is not strictly custodial is covered.

The company also argues that necessary care could have been confined to a four-hour period. The cumulative time required to perform the duties might have required fewer than four hours per day, but the need for medical expertise was sporadic. In the months after Mr. Murch's stroke, care givers assisted Mr. MUCH throughout the day and night. An entry in late May shows that he was still using a wheelchair and required assistance during the night with transferring, walking, turning or positioning, and "treatments." (AR Vol. 2 of 4 at AET 0931). Mrs. MUCH was reportedly unable to assist her husband with these tasks.

Determining that a claim determination is unreasonable in turn affects the requirement that Plaintiff exhaust administrative remedies.

**D. Requirement that plaintiff exhaust administrative remedies**

A claimant ordinarily must exhaust administrative remedies before filing suit under ERISA. Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980). Exhaustion will be required only when it is required by the particular plan involved. Nelson v. EG&G Energy Measurements Group, Inc., 37 F.3d 1384 (9th Cir. 1994). There are exceptions to the general rule that review procedures must be exhausted. For example, unreasonableness—either substantive or procedural—on the part of a plan fiduciary can relieve the claimant of having to exhaust review procedures. A finding that pursuing a claim would be futile also can trigger an exception to the exhaustion rule.

**1. ERISA's procedural requirements.** ERISA sets forth minimum requirements for claims

ORDER - 9

procedures. Every plan must provide a claimant with "a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination." 2 ERISA § 503, 9 CFR § 2560.503-1(h)(1). "Full and fair review" means, inter alia, providing the claimant with an opportunity to submit information relevant to the claim and a review process that takes into account the information submitted. 29 CFR § 2560.503-1(h)(2). When a claimant appeals a denial of benefits, the review must not defer to the initial decision and must be conducted by an appropriate named fiduciary who is neither the individual who made the initial determination nor one of her subordinates. 29 CFR § 2560.503-1(h)(3)(ii). If the initial determination was made on the basis of a medical judgment (for example, a judgment that a treatment was not medically necessary), the fiduciary must consult with a health care professional who has experience in the relevant medical field.

The SPED in this case explicitly requires claimants to exhaust plan remedies before filing suit: "You . . . must follow the claims and appeals procedures outlined below before taking action in any other forum regarding a claim under The Prudential Welfare Benefits Plan" (Dkt. 9, Ex. C, Attachment 4 at 22). The Plan's full claims procedure runs as follows: Once a beneficiary files a claim, Aetna has a maximum of 30 days to provide a "Notice of Adverse Benefit Determination" (Id. at 24). The beneficiary may then file an appeal, to which Aetna has 30 or 60 days to respond, depending on the type of appeal. If the decision is still adverse, the beneficiary is deemed to have exhausted the plan remedies and may file suit within one year of the final determination of the appeal (Id. at 27-29). Here, exhaustion is required by the Plan. Unless an exception applies, Plaintiff would have to follow the full claims procedure before filing suit for denied benefits.

**2. Exceptions to exhaustion requirement.**

**a. Unreasonable claims procedure.** A court may decline to require exhaustion where the claims procedure is procedurally and/or substantively unreasonable 29 CFR § 2560.503-1(k)(2)(ii). As discussed above, Aetna's claims procedure was substantively flawed; its interpretation of the SPED was

ORDER - 10

unreasonable. The company's claims procedure was procedurally flawed as well. An example of a deficiency that would give rise to a claim of procedural default is failure to comply with time limits for rendering a decision. Gilbertson v. Allied Signal, 328 F.3d 625 (10th Cir. 2003).

ERISA regulations regarding time limits for responding to beneficiaries' claims and appeals establish the "outer boundaries of reasonableness." Rodolff v. Provident Life & Accident Ins. Co., 256 F. Supp. 2d 1137, 1142 (D. Cal. 2003). In Rodolff, the court deemed a claims-resolution process that missed ERISA time limits to be to be unreasonable and granted de novo review. Id. at 1142-43. Under 29 C.F.R. § 2560.503-1(f)(2)(iii)(B), the claims administrator must respond to a "post-services" claim within 30 days.

As outlined in the Background section above, Plaintiff submitted two claims for home health care. The first was submitted on June 27, 2004, for care from February 8 through March 20, 2004. Aetna missed the window to respond to this claim by more than a month when it responded on September 2, 2004.

Plaintiff made a second claim, on December 3, 2004, for care during the period March 30-July 17, 2004. Plaintiff alleges, and the record supports, that Aetna mistakenly processed this claim as a duplicate appeal of the denial of the first claim. Defendant claims that the second claim amounted to a reiteration of previous arguments and evidence; however, Aetna was still obliged to respond to the claim and consider additional materials submitted in its support. A "full and fair review" means taking into account all information submitted by the claimant. 29 CFR § 2560.503-1(h)(2). Plaintiff's attorney sent a letter to Aetna on April 25, 2005, more than four months after the second claim was submitted. Aetna responded with a letter concerning the dates of the first claim.

Because Aetna's claims-review procedure–which missed the requisite response deadlines by more than a month in the case of the first claim and by more than four months in the case of the second claim–was substantively and procedurally unreasonable, Plaintiff is deemed to have exhausted administrative procedures for purposes of these two claims. Defendant's motions to deny coverage for

ORDER - 11

the period February 8-July 17, 2004, are denied. The claims are REMANDED to Aetna for proper review.

**b. Futile claims procedure.** Plaintiff argues that he did not submit a third claim because doing so would have been futile. Futility must be clearly demonstrated; "bare assertions of futility are insufficient to bring a claim within the futility exception." Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1485 (9th Cir. 1995). A district court's review is limited to the administrative record. Winters v. Costco Wholesale Corp., 49 F.3d 550 (9th Cir. 1995).

Here, Aetna's claims administrators made an internal decision, when the Murches had submitted claims only for the period through March 20, 2004, that claims after June 5, 2004, would be denied as "custodial." Dkt., Ex. D at 3-4. Furthermore, four months after Aetna was supposed to have made a benefits determination regarding Plaintiff's second claim, Aetna still had not responded. Plaintiff has sufficiently demonstrated futility in the case of claims submitted after July 17, 2004. The Court remands consideration of claims after July 17, 2004, to Aetna.

**3. Remedies.** Usually, a claimant whose plan fiduciary fails to comply with ERISA's procedural requirements is not entitled to an award of denied benefits. McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1315 (9th Cir. 1994), cert. denied, 514 U.S. 1066 (1995). Courts commonly remedy a violation of claims procedures by remanding the claim with instructions to the plan fiduciary to undertake a proper review. Following McKenzie, the Court REMANDS the claims for reconsideration and instructs Aetna to read the SPED as covering home health care that is not strictly custodial.

**Conclusion**

For these reasons, the Court DENIES Defendant's motions in totality. (1) The Court GRANTS Plaintiff's motion to have the claims reviewed de novo. The Plan documents fail to properly delegate discretionary authority to Aetna. However, analyzing Aetna's handling of the MUCH claims under both a de novo standard and an abuse of discretion standard, the Court reaches the same outcome as to all

ORDER - 12

other issue in this litigation. (2) The Court DENIES Defendant's motion to deny coverage for February 8-July 17, 2004. Aetna's interpretation of the plan was substantively and procedurally unreasonable. Plaintiff is deemed to have exhausted administrative remedies for claims through July 17, 2004, and the Court REMANDS these claims to Aetna so the company may undertake a proper review. (3) The Court DENIES Defendant's motion to deny consideration of Plaintiff's claims beyond July 17, 2004. Although Plaintiff did not submit a claim for this period, Plaintiff has demonstrated that doing so would have been futile. Aetna must undertake a review of Plaintiff's home health care after July 17, 2004, reading the SPED as covering home health care that is not strictly custodial.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 23rd day of May, 2006.

*/s/ Marsha J. Pechman*
Marsha J. Pechman
United States District Judge

ORDER - 13

Case 2:05-cv-00992-MJP   Document 33   Filed 05/23/06   Page 14 of 14